UNSATISFIED CLAIM AND JUDGMENT
FUND BOARD *v.* HOLLAND

[No. 79, September Term, 1965.]

*Decided February 4, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*James M. Gabler,* with whom were *Paul E. Burke, Jr.,* and *Smith, Somerville & Case* on the brief, for the appellant.

No brief and no appearance for the appellee.

McWILLIAMS, J., delivered the opinion of the Court.

We are asked, for the first time, to interpret the 1960 amendment (1960, ch. 49, § 1) to Code Art. 66½, § 154 (a) (1957 Cum. Supp. 1965). The Unsatisfied Claim and Judgment Board (the Board) exhorts us to set aside the interpretation of the trial court. The facts, the question presented and the rationale of the decision are all set forth in the trial court's opinion, which follows:

"The above matter was presented to the court on the following stipulation:

"1. The accident upon which the plaintiff's claim is based occurred on September 4, 1960.

"2. The Notice of Intention to Make Claim (form U.C.J. 201) was filed by the plaintiff with the U.C.J. Board on December 21, 1960, more than 90 days after the happening of said accident. The said Notice of Intention to Make Claim incorrectly gave September 25, 1960 as the date of said accident, which later date would be within the 90 day notice period. A copy of said Notice of Intention and physician's certificate is attached hereto.

"3. Suit was filed on behalf of the plaintiff and a General Issue Plea was filed on behalf of the defendant by assigned counsel, Paul E. Burke, Jr., and Smith, Somerville & Case, on November 1, 1961.

"4. Upon discovery that said Notice of Intention

had not been filed within 90 days from date of accident, and on instructions from the U.C.J. Board, said assigned counsel filed a Petition to Strike their appearance from said suit on December 15, 1961, and the Order thereon was signed by the Court on May 8, 1963, without prejudice to the question of Notice.

"5. On November 14, 1963, judgment was entered in favor of the plaintiff against the defendant, Lawyer W. Boice, in the total amount of $750.00 plus court costs. The Petition for Payment thereof was served on the Board on March 10, 1964, and the Answer to said Petition was filed on March 23, 1964.

"6. The attached copy of a letter dated November 25, 1960, from Vernon E. Meade, an insurance agent, was received by plaintiff's counsel in due course of mail.

"7. The question for determination by this Court is whether said letter of November 25, 1960, qualifies as a 'notice that an insurer has disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his (her) claim against a person or persons who allegedly caused him (her) to suffer damages', as provided by Chapter 49 Laws of 1960, amending Article 66½, Section 154(a).

"The principal issue to be decided is whether or not the letter of November 25, 1960, from the Amalgamated Labor Insurance Service to the attorneys for the plaintiff falls within the statutory exception provided for under Chapter 49 of the Acts of 1960 as follows:

" 'or (2) that he gave notice to the Board within 30 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages.'

"The letter in question reads as follows:

· " 'Biener and Connell
Azar Building
Ritchie Highway
Glen Burnie, Maryland
                    Re: Lawyer Boice
                        Policy No. A35-96
                            Olympic Insurance Company
Gentlemen:

Regarding the above we wish to inform you that Mr. Lawyer Boice has not been insured under the above policy since June 4th 1960.

The Olympic Insurance Company cancelled the policy as of that date and we do not have Mr. Boice insured with any other company at this time.

If I can be of any further help to you in this matter please contact me.

                            Yours truly,
                        /s/ VERNON E. MEADE.'

"It is conceded by the parties that the notice to the Board was given within thirty days of receiving the said letter from the alleged insurer.

"The court, in deciding this question, is required to determine whether this letter amounts to a disclaimer under the statutory exception or, as is argued by counsel for the Fund, it is merely a notice that the defendant had no coverage.

"The court must be mindful that this statute and particularly the statutory exception in question should be liberally construed to advance the remedy contemplated by the Legislature, due regard being had for the protection of the Fund and the realization of the essential legislative design. (Mundy [Mundey] v. Unsatisfied Judgment Fund, 233 Md. 169 at 173.)

"It is to be noted that the insurer did cover the defendant by a policy of insurance but which expired June 4, 1960—the accident having occurred September 4, 1960.

"Under the plain meaning of the language of the exception '* * * that an insurer had disclaimed on a

policy of insurance so as to remove or withdraw liability coverage for his claim * * *', it would seem that to disclaim is to repudiate or to deny or disavow any connection with or responsibility for a legal action. Black's Law Dictionary defines the act of disclaimer as the repudiation or renunciation of a claim or power vested in a person or which he had formerly alleged to be his.

"There seems to be no room for fanciful or theoretical differentiation between a notice of disclaimer and a notice of 'no coverage', as spelled out in the letter,—these are substantially synonymous. To interpret the letter in any other manner would do such violence to the plain meaning of the letter and to the plain definition of the word 'disclaim', so as to defeat the remedial right to which the Petitioner is entitled, and in giving liberal construction to this statutory exception the court believes that it is carrying out the legislative intent of the statute.

"Consequently the Petition for Payment of Judgment from the Unsatisfied Claim and Judgment Fund is hereby granted."

As pointed out by Judge Sybert, for the Court, in *Maddy v. Jones,* 230 Md. 172, 176, 186 A. 2d 482 (1962), the "Maryland Act [1957] was patterned after the earlier [1952] New Jersey law, New Jersey Statute Annotated (1961 ed.), Title 39, Chap. 6, Secs. 61-91." Indeed, except for the fact that New Jersey requires a 15 day notice, whereas Maryland enlarges this to 30 days, the language of the Maryland statute is precisely the same as the New Jersey statute. N. J. Rev. Stat., § 39:6-65 (1937 Cum. Supp. 1964).

Although we agreed with the Supreme Court of New Jersey, in *Mundey v. Unsatisfied Fund,* 233 Md. 169, 173, 195 A. 2d 720 (1963), that the statute should " 'be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design,' " we took a dim view of that court's inflation of the concept of "physical capability" (*Giacobbe v. Gassert,* 29 N. J. 421, 149 A. 2d 214 (1959)), as used in the clause immediately preced-

ing the one now under consideration. Nevertheless, we have again looked to the New Jersey decisions for enlightenment. We have also examined the decisions of the New York courts interpreting like provisions of the law of that state creating the Motor Vehicle Accident Indemnification Corporation. Besides New Jersey, New York and Maryland, only North Dakota has adopted similar legislation. The North Dakota statute, however, does not contain the proviso which now requires our interpretation.

In *Parrot v. Chiselko,* 74 N. J. Super. 138, 180 A. 2d 710 (1962), cited on the question of residence in *Maddy v. Jones, supra,* the plaintiff was injured on 30 July 1958. A few days later the defendant informed the plaintiff he was insured and he exhibited papers purporting to establish coverage by a well known company. Nine months later plaintiff's attorney was advised by the company that defendant's insurance had not become effective until 1 August 1958, two days after the accident. Since it was then too late to do otherwise plaintiff timely filed a notice of intention to make a claim under the disclaimer proviso of the statute. Judge Foley, for the Appellate Division of the Superior Court, said :

> "Therefore, the single question for determination is whether or not plaintiff's notice of intention to make claim was timely filed with the Fund under N. J. S. A. 39:6-65(b). This section of the statute provides, as an alternative to filing a claim with the Fund within 90 days of the happening of an accident under subsection (a), that a claim is timely if filed within 15 days of receipt by claimant of notice 'that an insurer had *disclaimed on a policy of insurance* so as to *remove or withdraw liability insurance coverage*' for the claim in question. (Emphasis added.) Specifically, the problem presented is whether American's letter of April 16, 1959 constituted a 'disclaimer' within the purview of the above italicized words." *Id* at 712.

\* \* \*

> "The Maryland statute (Ann. Code, 1957, Art. 66½, § 154(a), as amended L.1960, c. 49, § 1; L.1961, c.

682 § 1) contains the exception to giving notice as follows:

"'* * * (1) that he was physically incapable * * * or (2) that he gave notice to the Board within 30 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages. * * *'

"This provision is identical with the one in New Jersey except for the 30 days' (rather than 15 days') limitation." *Id* at 713.

Judge Foley then called attention to N. Y. Insurance Law § 608 (c) covering situations where "the insurer or insurers * * * have disclaimed liability or denied coverage * * *" and *Application of Broderick,* 31 Misc. 2d 350, 221 N. Y. S. 2d 122, 123 (1961) wherein this language was construed. Judge Foley continued:

"In the Broderick case plaintiff was involved in an accident on February 22, 1961. On February 27 his attorney sent a claim letter to the driver (and owner) of the car which struck him. On March 7, 1961 the driver replied informing plaintiff that his insurance policy was not in force at the time of the accident because of his failure to pay premiums, and a copy of the policy was enclosed which purported to cover the vehicle from December 8, 1960. On May 29, 1961 the insurer, in reply to plaintiff's attorney's letter of May 26, advised that the policy had been cancelled as of January 31, 1961. Within ten days the indemnification corporation was sent a notice of intention to file claim, but the notice was rejected as untimely. The court in ruling on plaintiff's contention that his notice came within the statute said:

" 'This information (the insurer's letter to plaintiff of May 29) did not constitute a "disclaimer or denial of coverage" within the meaning of subdivision (c) of section 608 since the quoted words presup-

pose at least a contrary assertion that a policy is in effect under which coverage is claimed. No such assertion was here made.' 221 N. Y. S. 2d, at p. 124.

"The court also noted that the result argued for by plaintiff would permit an injured person, after the other party admitted that he held no insurance, to contact a former insurer and thus extend the filing period." 180 A. 2d at 713-14.

Also quoted with approval, at 714, was a statement of the New York Supreme Court in an earlier case:

"To deny coverage is to take the position that for some reason or other the policy does not encompass the particular accident. No such claim is made here. A disclaimer of liability usually arises where there is coverage, but because of some action on the part of the insured, the company refuses to respond. This refusal could be for lack of cooperation by the insured, fraud perpetrated by the insured on the company or serving late notice of the accident, just to mention a few. There is no disclaimer in the present case." *Uline v. Motor Vehicle Accident Indem. Corp.*, 28 Misc. 2d 1002, 213 N. Y. S. 2d 871 (1961).

We might very well adopt as our own those portions of Judge Foley's concluding remarks which are set forth below:

"Having in mind our duty to ascribe to the language of the statute its plain and unambiguous meaning and to give full effect to its every word, even though by so doing we deprive a claimant of its benefits, we find to be inescapable the conclusion that American's letter of April 16, 1959 was not a disclaimer contemplated by N. J. S. A. 39:6-65(b). Plainly, the statutory wording, 'that an insurer had disclaimed on a policy of insurance so as to *remove* or *withdraw* liability insurance,' (emphasis added) imports that if the 'disclaimer' were not made, a valid policy of insurance would subsist. One cannot *withdraw* or *remove* a

thing which never existed. Cf. Wormack v. Howard, 33 N. J. 139, 162 A. 2d 846 (1960). Thus the undisputed fact that American's policy did not become effective until two days after the accident inalterably deprives the letter of April 16 of any force whatever as a disclaimer within the purview of the statute."

\* \* \*

"In arriving at this conclusion we are conscious of the fact that she [the plaintiff] is one of a class of persons for which the act was designed to provide redress. And we are not unmindful that she refrained from filing a notice within the 90-day period because she relied on Chiselko's implied representation that he held collectible insurance, and understandably misinterpreted the written information Chiselko laid before her.

"However, there is nothing in the act, express or implied, which charges the Fund with the misrepresentation of one claiming to be insured, nor is any suggestion contained therein that noncompliance with the notice provisions may be excused for this or any other reason. It would be entirely within the legislative authority to provide such an escape hatch if it chose to do so, and we must assume that the Legislature considered this possibility and rejected it in favor of the ringing mandate that compliance with the time provisions is a *condition precedent* to the right to an order for payment by the Fund." 180 A. 2d at 714-15.

Late New York cases which have followed *Broderick, supra,* are *Brucker v. Motor Vehicle Accident Indem. Corp.,* 41 Misc. 2d 281, 245 N. Y. S. 2d 640 (1963) wherein attorneys were advised to file the required affidavit within the 90 day period when coverage seems doubtful; *Roeder v. Motor Vehicle Accident Indem. Corp.,* 42 Misc. 2d 519, 248 N. Y. S. 2d 512 (1964), in which the result was characterized as harsh; and *Application of Cappiello,* 44 Misc. 2d 156, 253 N. Y. S. 2d 69 (1964), the court indicating that he did so with extreme reluctance.

Since we think the New York and the New Jersey courts have correctly interpreted the "disclaimer proviso" in their own statutes and since the pertinent language of our statute is, as far as this case is concerned, identical with the New Jersey statute and nearly so with the New York statute, we must reverse the trial court's order.

*Order reversed. Costs to be paid by the appellee.*