## GOAD *v.* FISHER, ET AL.

[No. 401, September Term, 1968.]

*Decided October 8, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Leon Shampain,* with whom were *Vaughan & Shampain* on the brief, and *William E. Brannan, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*John K. Keane, Jr.,* with whom was *Edward P. Camus* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

In this case the appellees (Fisher) recovered a judg-

ment in the amount of $3500.00 against the appellant (Goad). Goad is an uninsured motorist. Fisher sought payment from the Unsatisfied Claim and Judgment Fund (Fund).

The Fund filed an objection to payment, stating:

> "[T]here are several outstanding claims arising from the same accident, presently in litigation, which have not been finally disposed of, and it would be inequitable to pay the full amount of this claim prior to the disposition of said multiple claims."

The objection contained no information relative to the other claims other than the statement above quoted.

At the hearing before Judge Loveless in the Circuit Court for Prince George's County, counsel for the Fund said he knew there were other claims, but he had no personal knowledge as to the number of claimants, nor the potential amount of the claims. The court then required the Fund to submit information as to the number of people who had filed the notice of intent to make a claim required by Code (1967 Repl. Vol.) Art. 66½, § 154. Pursuant to that directive, the Fund filed a statement which said that five claims were filed against Goad as a result of the August 17, 1966, accident, identified the parties, stated that suit had been filed on four of the claims in the Superior Court of Baltimore City, and said that the claim of Fisher was the fifth claim. It was indicated that there had been no trial on the four Baltimore claims. No indication was given as to the nature or the amount of the Baltimore claims.

Judge Loveless in his opinion said:

> "The Fund, through its attorney, alleges that it would be inequitable to pay the full amount of plaintiffs' claim prior to a final disposition of multiple claims arising from the same accident. Although the Code does not provide an answer to this dilemma, this Court nonetheless does not

feel that these plaintiffs should be prejudiced by not being able to collect their judgment because other persons may be entitled to damages arising out of the same accident. We feel that the Fund has not met its burden of proving that other claimants would be prejudiced by an Order granting the plaintiffs' motion."

He thereupon passed an order directing payment to Fisher of the sum of $3500.00 and costs upon receipt of an assignment of their judgments in full to the Commissioner of Motor Vehicles.

The Fund contends that Fisher should not be paid his judgment until there has been final disposition of all other claims so that, in the event the total of the judgments is in excess of the statutory maximum, the judgments may be satisfied on a pro rata basis. The precise point here involved has not previously been submitted to this Court.

Code (1967 Repl. Vol.) Art. 66½, § 162 provides in pertinent part:

"The maximum amounts payable from the fund shall be fifteen thousand dollars ($15,000.00) exclusive of interest and costs, on account of injury to, or death of, one person in any one accident; subject to such limit for any one person so injured or killed, thirty thousand dollars ($30,000.00), exclusive of interest and costs, on account of injury to, or death of, more than one person, in any one accident; * * *."

Sec. 158 provides for the filing of a claim for payment in the court in which the judgment was entered "upon the termination of all proceedings, including reviews and appeals in connection with such judgment." Sec. 159 provides for hearing on the application for payment of judgment. Sec. 160 provides for passage of an order for payment if the Court is satisfied, upon the hearing, of the truth of all matters required to be shown by the appli-

cant by § 159 and that the applicant has pursued his remedies referred to in paragraph (3) of subsection (b) of § 162. Nowhere in the statute has provision been made for determination of whether judgments should be paid on a "first come, first served" basis, as Fisher contends, or whether payment should be postponed until all litigation has been concluded so that there may be a pro rata payment of judgments, as the Fund contends. The specific attention of the General Assembly is called to this omission.

The Fund calls our attention to an opinion by Judge Sodaro in the Superior Court of Baltimore City in 1961 in the case of *Dell v. Smith*, Docket 1960, folio 1122, No. 62821. There, when the Fund limitation was $20,000.00 for each accident, Bessie Dell recovered judgment of $8500.00 and Ruth Dell recovered judgment of $8100.00 against Smith. Suits were also pending in Garrett County arising out of the same accident. It apparently was contended the probable Garrett County judgments, when added to the other judgments, would produce a total in excess of $20,000.00. Counsel for the Garrett County plaintiffs claimed his clients had not reached maximum improvement. Therefore, he was unwilling at that time for the cases to go to trial. In refusing to pass an order directing the Fund to then pay the Dell judgments, Judge Sodaro said:

> "To hold that there should be no pro rating would not seem to be in keeping with the legislative intent. All claimants filing suit against the same uninsured motorist would not be expected to secure judgments simultaneously. Claimants should not be required to engage in a race for the funds, and their success or failure should not depend upon their ability to first conclude their litigation."

The Dell claimants appealed to this Court, the case of *Dell v. Smith*, being No. 206, September Term, 1961. The Fund derives comfort from the fact that the appeal was

dismissed. Reference to the order of dismissal, however, reveals that the case was dismissed on the strength of *Simpler v. State, Use of Boyd*, 223 Md. 456, 165 A. 2d 464 (1960), and *Hart v. Comm. of Motor Vehicles*, 226 Md. 584, 174 A. 2d 725 (1961), there being no appeal to this Court in such cases prior to the enactment of the present Code (1967 Repl. Vol.) Art. 66½, § 177A by Chapter 49 of the Acts of 1962.

The Fund in its brief advises that since *Dell v. Smith*:

"In one situation involving the Fund when the limits were $10,000.00 for each claimant and $20,000.00 in the aggregate, where judgments totalling in excess of $20,000.00 were recovered, and one claim remained unresolved, the court set aside $10,000.00 for the unresolved claim, and divided the remaining $10,000.00 among the liquidated claims, with a proviso for a further order when the remaining claim had been reduced to judgment.

"In another situation where twelve of seventeen claims were resolved for approximately $22,500.00, the trial court issued a show cause order to the attorney representing the remaining five claimants. When that attorney admitted on the record that his five claims were not collectively worth more than $7,500.00, the trial court directed Fund payments.

"In another trial court proceeding where an order to pay was granted as to some claimants, but a contest on the petition for payment was still pending as to other claimants, where the aggregate of all judgments exceeded Fund coverage, the plaintiffs whose petition for payment had been granted entered into a stipulation accepting *pro rata* payment presently, pending a final disposition of the disputed pending petition for payment.

"There is presently pending a case where

> eighteen bus passengers claimed minor injuries when an uninsured bumped a bus. As each claimant works out a settlement, he furnishes the Fund with written consents from all the other claimants, whereupon the Fund pays."

The Maryland Unsatisfied Claim and Judgment Fund Law has been recognized as modeled on the New Jersey statute. *Allied American Co. v. Commissioner,* 219 Md. 607, 150 A. 2d 421 (1959) ; *Maddy v. Jones,* 230 Md. 172, 186 A. 2d 482 (1962) ; *Unsatisfied Fund v. Holland,* 241 Md. 294, 216 A. 2d 525 (1966). Accordingly, Maryland has looked to New Jersey for enlightenment.

There is no reported appellate opinion in New Jersey on the subject. Such a question was before the Law Division of the Superior Court of New Jersey, however, in *Clarke v. Brown,* 101 N. J. Super. 404, 244 A. 2d 514 (1968). As the result of an accident there, the driver and his two passengers all sued the operator of the other vehicle. The driver and one passenger recovered judgments while the second passenger, Balanetsky, had not, as of the time of hearing, recovered a judgment. Balanetsky sought to intervene in the proceeding involving the driver's application to be paid from the Unsatisfied Claim and Judgment Fund. Permission was denied. The Court said:

> "The Fund merely proposes to give to those who suffer injury through the negligence of an uninsured motorist some basic measure of relief through a special fund.
>
> "Had the Legislature intended that the statutory amount should be shared proportionately by all persons who, within the time fixed by the statute of limitations, might sue and recover judgments against the uninsured driver, it would have definitely said so, or it would have provided that the amount should be for the benefit of every person injured to the extent of $10,-000 per person. See Turk v. Goldberg, [91 N.J. ·

Eq. 283, 109 A. 732 (Ch. 1920)]. To hold that
the statutory amount is for the benefit of all in-
jured persons pro rata would make it necessary
for the Fund to ascertain, before it could safely
pay anyone, how many persons might have
claims therein, and what the total amount of
judgments which might be presented would be.
Settlements have a very high priority in our ju-
dicial system. In fact the act itself provides for
the making of settlements. N.J.S.A. 39:6-72.
Good faith settlements are encouraged in order
to avoid or terminate litigation, and oft-times a
settlement by the Fund reduces the amount
which it is called upon to pay. The practical ef-
fect of Balanetsky's contention would be to bar
any settlement by the Fund, at least where more
than two persons are injured in a single acci-
dent." *Id.* at 414-15.

We are advised that no appeal was taken in that case.

The majority rule seems to be that distribution among
multiple claimants of inadequate insurance proceeds is to
be on the basis of the priority of their judgment. 7 Am.
Jur.2d, *Automobile Insurance*, § 198. The problem is dis-
cussed in an annotation at 70 A.L.R.2d 416 where it is
said:

"If one regards liability insurance as a fund
not only for the protection of an insured against
liability but also as a fund for the protection of
injured claimants, it would seem that in in-
stances where multiple claimants can only look
to insurance proceeds for reparation because of
the insured's insolvency, neither distribution of
inadequate proceeds on the basis of priority of
judgment nor on the basis of priority of settle-
ment is satisfactory. Under both methods, some
claimants recover an amount much less than
they equitably deserve, or even recover nothing
at all while other claimants recover their en-

tire claims. However, straight prorata distribution has the disadvantage of delay, since an insurer might have to wait until it was certain that all claims had been presented, or that the statute of limitations had run, before making any payments."

Precisely the same comment might be made with reference to payments from the Fund.

We do not wish to be understood in this opinion as specifying the course of action which should be followed in the future, on somewhat different facts, on claims arising against the Fund. We hope the General Assembly will fill the void.

This case presents facts different from those before Judge Sodaro in *Dell v. Smith, supra.* In that case there was positive information before Judge Sodaro relative to the other potential claims. Here, despite the information the Fund had under § 154, and which it should have had on the actual suits by virtue of the provisions of § 154 requiring service of copy of complaint and § 156 relative to defense of actions against uninsured motorists, the Fund chose to submit no information as to the other claims when it filed its objection. When Judge Loveless required additional information, the Fund merely indicated the number of other claims, the court in which they were being litigated, and the fact that judgments had not been recovered. On this record, we believe Judge Loveless was entirely correct in concluding that the Fund had shown no prejudice which would result from prompt payment of the judgment obtained by Fisher.

*Order affirmed; appellant to pay the costs.*